HERBERT WILKIE, d. b. a. WILKIE WELL DRILLING, v. REINHOLD BECKER AND OTHERS.

128 N. W. (2d) 704.

May 22, 1964—No. 39,082.

*John H. Shaughnessy,* for appellant.
*King & Flora,* for respondent Becker.
*Bradford & Kennedy,* for other respondents.

Frank T. Gallagher, C.

Appeal from a judgment of the district court. Herbert Wilkie, doing business as Wilkie Well Drilling, referred to herein as plaintiff, brought this action against Reinhold Becker, referred to as defendant-bankrupt; Thomas J. Murphy, trustee in bankruptcy for said bankrupt, referred to as trustee; First National Bank of Bertha, referred to as garnishee; and Jerome F. Ehnes, George Ehnes, and Walter Becker, referred to as assignees.

It appears from the record and briefs that on December 6, 1960, the defendant-bankrupt executed three written assignments,[1] identical in language, whereby, according to trustee, he attempted to assign, while insolvent, the sum of $93.91 to his brother-in-law, Jerome Ehnes; $1,929.56 to his father-in-law, George Ehnes; and $1,800 to his father, Walter Becker, above referred to as assignees.

The money was to be paid from the proceeds of an auction sale of farm personal property, which sale defendant-bankrupt was to hold on December 15, 1960. Plaintiff claims that the defendant-bankrupt retained the garnishee to act as clerk for the auction sale, although there is no evidence to sustain this statement. In any event, the garnishee acknowledged receipt of the assignments on December 6, 1960, and acted as clerk of the sale on December 15, 1960.

Plaintiff alleges in his complaint that on or about December 12, 1960, an action was commenced in Todd County District Court against the defendant-bankrupt and that on March 2, 1961, a judgment was entered in favor of the plaintiff for $728.10. He further alleges that on December 15, 1960, the date of the auction sale, a garnishee summons was served on the defendant-bankrupt and the garnishee.

It appears that thereafter the garnishee executed its garnishment

---

[1] The assignments provided as follows: "We hereby assign the sum of $———— from the proceeds of our sale to be held on or about December 15, 1960, to ————————, Minnesota, and request that you charge our sale account and remit to the within named assignee as early as possible after date of sale. This assignment, however, is subject to existing Mortgage Liens and former assignments."

Names, amounts, and witnesses included in originals.

disclosure disclosing that at the time of service of the garnishee summons the garnishee was indebted to the defendant-bankrupt in the sum of $8,938.76, plus or minus adjustments pending measurement of hay sold; also that the garnishee claimed certain setoffs, defenses, liens, and claims to said sum consisting of chattel mortgages, a conditional sales contract on the property sold at the auction, plus the three assignments above referred to and certain checks held for collection. The garnishee paid the holders of the chattel mortgages and conditional sales contract and now holds the balance of $2,589.98, which amount it is willing to pay in the manner decreed by the court.

The trustee filed an answer and cross-complaints against the three assignees, claiming that the alleged assignments were void; that his rights as trustee were superior to plaintiff's, and asked that the court order the garnishee to pay the entire sum held to him as trustee for the benefit of all of the creditors of the defendant-bankrupt.

The trial court found, among other things, that on April 25, 1961, defendant-bankrupt was adjudged bankrupt by a United States District Court; that Thomas J. Murphy was duly appointed, qualified, and acted as trustee in bankruptcy; that plaintiff admitted and recognized the legal right of the trustee to any money which plaintiff might recover in this matter and therefore assigned all of his rights and interests in said cause of action and garnishment to the trustee; and that the garnishee admitted by its answer that it is a mere stakeholder and will pay the money now in its possession in the manner directed by the court. In its conclusions of law the trial court denied the claims of the trustee and determined that the assignments to Jerome Ehnes and George Ehnes were prior in time to that of Walter Becker and that the garnishee should pay Jerome Ehnes $93.91, in full; George Ehnes $1,929.56, in full; and the balance of the $2,589.98 to Walter Becker. This appeal from the judgment entered was taken by the trustee.

The legal issue raised by the trustee on appeal is whether a promise to apply the proceeds of specified property upon a particular debt gives a lien upon or right to such proceeds until so applied. He argues that the assignments are not transfers of any present or future interest

in anything, but at best are only requests by the defendant-bankrupt to the garnishee to pay certain sums of money to the three assignees from the proceeds of a future sale at such time as the garnishee is able to do so. He further contends that the requests would not transfer any interest in the proceeds of a future sale to the assignees until the money was actually paid to them; and that until such proceeds were paid to the assignees, the entire sum of money was the property of the defendant-bankrupt and subject to garnishment by his creditors.

The trustee cites O'Connor v. Einfeldt, 164 Minn. 422, 205 N. W. 268, as controlling. In that case the controversy was between the plaintiff, who had a judgment against the defendant for $465.55, and an intervenor bank, which had a chattel mortgage upon the greater part of the defendant's personal property to secure a promissory note of $5,000. By an arrangement between the defendant and the bank, the defendant disposed of his personal property at a public auction and something over $4,700 was realized. The cashier of the bank "clerked the sale," and while the proceeds were still in his hands, plaintiff caused a garnishee summons to be served upon him. The bank filed a complaint in intervention claiming the entire proceeds of the sale, to which plaintiff interposed an answer. The trial court rendered judgment in favor of the plaintiff against the garnishee for $465.55. The bank claimed on appeal that the defendant had agreed that the entire proceeds of the sale should be applied upon the indebtedness to the bank. In that connection this court commented (164 Minn. 424, 205 N. W. 269):

"* * * [The bank] seems to claim that the lien of the mortgage was extended thereby to cover the proceeds of that part of the property which had not been included in the mortgage. No authority is cited in support of this claim, and we know of none supporting it.

"A promise to apply the proceeds of specified property upon a particular debt gives no lien upon such proceeds, and no right to the promisee to pursue that particular fund, until the promisor has appropriated it to the promisee by applying it as a payment on the debt."

We held that the record did not establish as a matter of law that the proceeds of the property not included in the chattel mortgage had been

appropriated to or applied upon the indebtedness due the intervenor in the manner required before service of the garnishee summons. We determined that the plaintiff had acquired a valid lien by his garnishment and affirmed the judgment.

We do not consider the O'Connor case controlling under the facts and circumstances here. In that case the intervenor bank claimed that the entire proceeds of the sale should be applied on Einfeldt's indebtedness to it because Einfeldt had so agreed when arrangements were made for the sale. The opinion does not state whether the "claimed" agreement was written or oral. In the instant case we are not confronted with a "claimed" agreement but with what appear to be absolute written assignments. It is true that the sale proceeds from which the assignments were to be paid were not in existence at the time the assignments were made on December 6, 1960, but the personal property to be sold to create the proceeds appears to have been in existence at that time. The necessary steps to convert the property into proceeds were completed on December 15, 1960. It is undisputed that the garnishee acknowledged receipt of the respective assignments on December 6, 1960.

The assignees cite as controlling Hillsdale Distillery Co. v. Briant, 129 Minn. 223, 152 N. W. 265. The sole question in that case was whether a claim presented to the city council of Cloquet for a refundment of an unearned portion of a license fee was assignable. We said (129 Minn. 226, 152 N. W. 266):

"* * * Though under the strict letter of the old rule neither property nor property rights, having no present existence, can be mortgaged or transferred by assignment, yet to uphold and sustain many such transactions the rule of potential existence was invented, under which a mortgage of crops to be grown in the future, the assignment of wages to be earned under an existing contract of employment, and other rights having a substantial foundation in anticipation, have been held valid. [Citing cases.] * * * Courts of equity have further departed from the rule of the common law by upholding assignments of mere expectancies and possibilities of the future acquisition of the thing assigned."

In 6 Am. Jur. (2d) Assignments, § 8, it is stated:

"* * * It is the general rule of law, in the absence of any statutory modification, that in order for a right or interest to be assignable it must have, at the time of the purported assignment, either an actual or a potential existence. * * *

"In equity, however, the rule is different. The assignment of contingent interests, expectancies, and things not in esse, but resting in mere possibility, is recognized and takes effect when the thing assigned comes into existence, providing it was fairly made, is supported by a sufficient consideration, and is not contrary to public policy." Citing Hillsdale Distillery Co. v. Briant, *supra*.

6 Am. Jur. (2d) Assignments, § 16, provides:

"The general rule is that the right to receive money due or to become due under an existing contract may be assigned even though the contract itself may not be assignable. A contract to pay money may be assigned by the person to whom the money is payable, unless there is something in the terms of the contract manifesting the intention of the parties that it shall not be assigned."

Minn. St. 521.01, subd. 3, provides in part:

" 'Assignment' means a transfer upon a sale or pledge of an account or any part thereof."

In connection with partial assignments, 2 Dunnell, Dig. (3 ed.) § 560, states:

"An assignment of a part of an entire thing in action may be made and the equitable interests of the assignee will be protected."

It is our opinion that under the record here the judgment of the trial court should be affirmed.

The assignments appear to be in proper form, properly signed, witnessed, and delivered to the assignees and accepted by the bank which clerked the sale, all prior to the date of the sale. There is no indication of fraud, as evidenced by the settled case stipulation which states:

"The trustee in bankruptcy makes no claim of actual fraud with

respect to assignments to the defendant Walter Becker, George Ehnes, and Jerome F. Ehnes, and the assignments and auction sale having taken place more than four months prior to the adjudication in bankruptcy, Reinhold Becker trustee makes no claim * * * of a voidable preference with respect to such assignments."

Affirmed.

MR. JUSTICE MURPHY took no part in the consideration or decision of this case.