STAR WINDSHIELD REPAIR, INC., as assignee for Aaron HELGET, Petitioner, Appellant (A07–216)

v.

WESTERN NATIONAL INSURANCE CO., Respondent (A07–216),

and

The Glass Network, Claimant (A07–217),

Auto Glass Express, as assignee for Kathy Heglos, claimant, Appellant (A07–217),

v.

Austin Mutual Insurance Company, Respondent (A07–217),

and

State Farm Mutual Automobile Insurance Company, petitioner, Appellant (A07–830),

v.

Archer Auto Glass, as Assignee of Ronald Hornberg, Respondent (A07–830).

Nos. A07–216, A07–217 and A07–830.

Court of Appeals of Minnesota.

Feb. 5, 2008.

Charles J. Lloyd, Livgard & Rabuse, P.L.L.P., Minneapolis, MN, for appellants Star Windshield Repair and Auto Glass Express, and for respondent Archer Auto Glass.

Eric J. Magnuson, Briggs & Morgan, P.A., Minneapolis, MN; and Mark R. Bradford, Bassford Remele, Minneapolis, MN, for respondent Western National Insurance Co.

Steven R. Kluz, Mohrman & Kaardal, P.A., Minneapolis, MN, for respondent Austin Mutual Insurance Company.

Leatha G. Wolter, Jenneane L. Jansen, Meagher & Geer, P.L.L.P., Minneapolis, MN, for appellant State Farm Mutual Automobile Insurance Company.

Considered and decided by SHUMAKER, Presiding Judge; WORKE, Judge; and MUEHLBERG, Judge.*

## OPINION

SHUMAKER, Judge.

Each of these appeals is taken from a district court decision resolving a motion to vacate an arbitrator's award related to claims for insurance policy proceeds made by auto glass repair companies as purported assignees of the insured policyholders. In two of the cases, the district court vacated the arbitrators' awards, concluding that anti-assignment language in the insurance policies precluded assignment of post-loss auto-glass claims. In the third case, the district court denied the motion to vacate, concluding that the assignment of a post-loss claim was not precluded by policy language. Because plain language in each of the insurance policies precludes all assignments, we affirm the two orders vacating the arbitrators' awards and reverse the order denying the motion to vacate.[1]

## FACTS

The dispositive issue in each of these companion cases is whether an anti-assignment provision in a motor vehicle insurance policy is enforceable as to post-loss physical damage proceeds so as to preclude a purported assignee from asserting the right to dispute the amount of such proceeds.

Each insurer provided comprehensive insurance, which included coverage for windshield and glass damage. Western National Insurance Co. and Austin Mutual Insurance Company had identical anti-assignment provisions in their policies: "Your rights and duties under this policy may not be assigned without our written consent." State Farm Mutual Automobile Insurance Company's anti-assignment pro-

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

1. We note that our decision in this case is consistent with that reached in *Auto Owners Ins. Co. v. Star Windshield Repair, Inc.*, 743 N.W.2d 329(Minn.App.2008).

vision was expressed differently: "No change of interest in this policy is effective unless we consent in writing."

In each case, an insured vehicle sustained windshield or glass damage and the insured policyholder contracted with a glass repair company to fix or replace the damaged item. Each repair company's agreement contained an assignment clause by which the insured assigned to the company any claim for insurance proceeds.

The respective repair companies performed glass repair work and directly billed the applicable insurers. Each insurer paid for the repair work but in an amount less than that billed. Asserting rights as assignees under the insurance policies, the repair companies initiated arbitration proceedings. Over the insurers' objections, arbitrators held hearings and made awards exceeding the sums the insurers had paid to the repair companies.

The insurers respectively moved the district court to vacate the arbitration awards, arguing that the purported assignments were void. In the cases of *Star Windshield Repair, Inc. v. W. Nat'l Ins. Co.* and *Auto Glass Express v. Austin Mut. Ins. Co.*, the district court agreed with the insurers and vacated the awards. The repair companies appealed. In the matter of *State Farm Mut. Auto. Ins. Co. v. Archer Auto Glass*, the district court held that the anti-assignment provision did not extend to post-loss proceeds and confirmed the award. The insurer appealed. We consolidated these appeals for decision.

## ISSUE

When a policy of comprehensive motor vehicle insurance prohibits the assignment of rights, duties, or interests without the insurer's consent, does the prohibition validly extend even to the assignment of post-loss insurance proceeds?

## ANALYSIS

It is undisputed that the arbitrations in these consolidated cases are governed by the Minnesota No–Fault Automobile Insurance Act. Minn.Stat. §§ 65B.41–.71 (2006). No–Fault arbitrators are "limited to deciding questions of fact, leaving the interpretation of law to the courts." *Gilder v. Auto–Owners Ins. Co.*, 659 N.W.2d 804, 806 (Minn.App.2003) (quoting *Weaver v. State Farm Ins. Cos.*, 609 N.W.2d 878, 881 (Minn.2000)). But no-fault arbitrators are authorized in certain cases to make legal determinations necessary to grant relief. *Weaver*, 609 N.W.2d at 882. Accordingly, an arbitrator's determination of a legal issue is subject to de novo review. *Klinefelter v. Crum & Forster Ins. Co.*, 675 N.W.2d 330, 334 (Minn.App.2004).

The interpretation of a provision in an insurance policy is a legal issue. *AMCO Ins. Co. v. Ashwood–Ames*, 534 N.W.2d 740, 741 (Minn.App.1995), *review denied* (Minn. Sept. 28, 1995). In each of the consolidated cases, an arbitrator interpreted an anti-assignment clause in an insurance policy to permit the assignment of post-loss insurance proceeds. If an arbitrator errs as a matter of law in making an award, the arbitrator thereby exceeds his power and the award may be vacated. Minn.Stat. § 572.19, subd. 1(3) (2006); *Weaver*, 609 N.W.2d at 882.

An insurance policy is a contract to which the general rules of contract law apply, unless there are statutory provisions to the contrary. *Waseca Mut. Ins. Co. v. Noska*, 331 N.W.2d 917, 926 (Minn. 1983). One ubiquitous rule of contract law that applies here is that, if there is no ambiguity in policy terms, the insurance contract is to be given its plain meaning. *Bobich v. Oja*, 258 Minn. 287, 294, 104 N.W.2d 19, 24 (1960). The glass repair

companies do not contend that the anti-assignment clauses are ambiguous, nor do we find them to be so. All the clauses here plainly have broad reach, precluding any transfer of a right or interest under the respective policies. Thus, on the face of each policy, the insured may not assign the right to receive insurance proceeds or the right to litigate a dispute over the amount of proceeds claimed to be due. Despite this plain and broad prohibition, the glass repair companies argue that Minnesota law allows the assignment of post-loss property-insurance proceeds. In addressing this contention, we note at the outset that these cases do not involve liquidated sums that the respective insureds have merely directed their carriers to pay to third parties. Even under the language of these policies, such a directive to pay a fixed sum to another would be permissible. Caselaw has not always made the distinction between assigning liquidated proceeds and unliquidated proceeds. The distinction is significant because the former assignment implicates only the mechanical transfer of money, while the latter assignment carries with it the substantive right to litigate the amount of the insurance benefit the insurer is obligated to pay. In the context of the cases on appeal, the assignee of unliquidated proceeds, here the glass repair companies, would have the right to submit the claim, if it is $10,000 or less, to mandatory and binding No–Fault arbitration. Minn.Stat. § 65B.525 (2006).

The glass repair companies argue that Minnesota precedent permits a post-loss assignment of insurance proceeds despite an anti-assignment clause in the policy, and that the purpose of such a clause is not depreciated by a post-loss assignment.

■ Addressing the latter argument first, we note that the glass repair companies contend that the purpose of an anti-assignment clause is twofold. First, it prevents an increase in the risk of loss to the insurer without the insurer's knowledge and consent. Second, it protects the insurer from having to do business with a party it has not chosen to do business with. The companies argue that, because the loss has already occurred, there can be no increase in the risk covered by the policy, and that, by statute, insurers are required to do business with glass repair companies. *See* Minn.Stat. § 72A.201, subd. 6(14) (2006) (providing statutory guidelines for settlement of window-glass damage claims). Although the glass repair companies are correct in identifying at least two reasons an insurer might include an anti-assignment clause in an insurance policy, when the language of the policy is unambiguous, as it is here, we are not permitted to interpret it, but rather we must give effect to the plain meaning the parties intended. *See Thommes v. Milwaukee Ins. Co.,* 641 N.W.2d 877, 880 (Minn.2002) ("When the language of an insurance contract is unambiguous, it must be given its plain and ordinary meaning.").

That brings us to the contention that Minnesota precedent permits the type of assignment at issue here. For that proposition, the glass repair companies rely on *Windey v. N. Star Farmers Mut. Ins. Co.,* 231 Minn. 279, 43 N.W.2d 99 (1950); *Ill. Farmers Ins. Co. v. Glass Serv. Co.,* 683 N.W.2d 792 (Minn.2004); *Reitzner v. State Farm Fire & Cas. Co. Inc.,* 510 N.W.2d 20 (Minn.App.1993), *superseded by statute,* 1994 Minn. Laws ch. 435, § 1, at 257, *as recognized in Border State Bank of Greenbush v. Farmers Home Group,* 620 N.W.2d 721, 723 (Minn.App.2000); and *In re Estate of Sangren,* 504 N.W.2d 786.

*Windey* involved a real estate purchase agreement that required the vendor's insurance proceeds from any property loss to be applied against the purchase price. 231 Minn. at 281, 43 N.W.2d at 100. Even

though the contract contained an anti-assignment of the policy clause, the supreme court held that the requirement in the purchase agreement "did not constitute an assignment of either the policy or the proceeds thereof." *Id.* at 283, 43 N.W.2d at 101. In fact, "[i]t gave the vendee no rights against the insurer, but only against the [insureds] so far as concerned the application of the proceeds in case of loss or damage." *Id.*, 43 N.W.2d at 101–02. In dictum, the court went on to say that a post-loss assignment is not an assignment of the policy:

> Assignment, after loss, of the proceeds of insurance does not constitute an assignment of the policy, but only of a claim or right of action on the policy. Such an assignment does not void the policy under a provision that if it is assigned without the insurer's consent it shall become void.

*Id.*, 43 N.W.2d at 102 (citations omitted).

In *Illinois Farmers*, the Minnesota Supreme Court held that arbitration is required to resolve automobile-glass claims. 683 N.W.2d at 796. But the insurer in that case did not contend that glass claims were not assignable. Rather, the dispute centered on whether the glass claims were arbitrable singly or collectively. *Id.* at 798. There is nothing in the *Illinois Farmers* opinion that supports an inference that the insurance policy here contained an anti-assignment clause. But, if the policy did have such a clause, it is clear that the insurer did not raise it as an issue.

*Reitzner* dealt with a casualty insurance policy on property purchased by vendee on a contract for deed. 510 N.W.2d at 22. The vendee was the named insured and the vendor's assignee was listed as an additional insured. *Id.* The property was damaged by a fire that the named insured intentionally set. *Id.* Policy language stated that such an intentional act voided the policy and precluded payment to the insured who set the fire and to "any other insured." *Id.* The court of appeals held that the clear language of the policy excluded coverage to the additional insured. *Id.* at 24.

In dictum, the court discussed the standing of an assignee, who took an assignment of both vendor and vendee interests, to bring an action against the insurer. *Id.* at 26. The court concluded that despite a prohibition against assignment of "this policy," the assignee "did not receive a pure assignment of the policy, but rather, received an assignment of the proceeds due under the policy should the claim be successful." *Id.*

Finally, in *Sangren*, the court of appeals addressed the assignment of a homeowner's insurance policy that contained an anti-assignment clause. 504 N.W.2d at 790. The court held that the insurer had waived any objection to the assignment. *Id.* Then, in dictum, the court added that "this was not really an assignment of the policy. Rather it was an assignment of the *proceeds* of the policy." *Id.*

None of the Minnesota precedents on which the glass repair companies rely provides controlling law on the issue before us. In three of the cases, the comments regarding the assignment of proceeds are dicta, and in the fourth, no issue as to a prohibition of assignment was raised. Moreover, in the three cases in which the dicta appears, the insurance policies prohibited assignment of the "policy" itself. The courts in those cases simply recognized a difference between assigning a policy and assigning loss proceeds. In the cases before us now, however, the anti-assignment clauses refer to rights and interests and duties. This prohibitory language is broad enough to reach loss proceeds as well as the policies themselves.

We hold that the issue on appeal is controlled by the Minnesota Supreme Court's most recent decision as to contractual anti-assignment clauses in *Travertine Corp. v. Lexington–Silverwood*, 683 N.W.2d 267 (Minn.2004). Although it is not an insurance-policy case, *Travertine* observed that "our precedent that parties may agree that their contractual rights and obligations are not to be assigned is well-established." *Id.* at 272. The court traced the precedent back to its 1964 decision in which the court explained the general rule as to assignment of proceeds:

> The general rule is that the right to receive money due or to become due under an existing contract may be assigned even though the contract itself may not be assignable. A contract to pay money may be assigned by the person to whom the money is payable, *unless there is **something** in the terms of the contract manifesting the intention of the parties that it shall not be assigned.*

*Id.* (quoting *Wilkie v. Becker*, 268 Minn. 262, 267, 128 N.W.2d 704, 707 (1964)).

The *Travertine* court then noted that the disputed management agreement contained the prohibition that "the rights and obligations of Berkey/Lenna shall not be assignable." *Id.* The court held that this language was a sufficient indication of "something in the terms of the contract manifesting the intention of the parties that it shall not be assigned." *Id.*

The glass repair companies here contend that *Travertine* is not sound authority because it does not involve an insurance policy. The Minnesota Supreme Court has stated that insurance policies are sometimes treated differently from ordinary contracts because the insurance business is quasi-public in nature. *Illinois Farmers*, 683 N.W.2d at 802. The court has explained that, because of the nature of the insurance business, the state may

regulate it so as to protect the public and, "[i]f a term in an insurance contract conflicts with Minnesota statutes, the contract term becomes unenforceable." *Id.* But as to the issue of the broad prohibition against assignment without the insurer's consent, the glass repair companies have not shown that insurance contracts here are sui generis or that anti-assignment clauses conflict with statutory law. Thus, general principles of contract law apply, and *Travertine*, applying such principles, controls the outcomes of these cases.

We also reject the glass repair companies' argument that public policy dictates the free assignability of post-loss proceeds. Just as the insurance industry is highly regulated, "Minnesota's auto glass industry is highly regulated" as well. *Illinois Farmers*, 683 N.W.2d at 796. Public policy dictates that an insured ought to be able to select his own auto glass vendor and that the insurer should be required to pay that vendor as long as the vendor's charge is fair and reasonable. That policy is reflected in Minnesota's Unfair Claims Practices Act, Minn.Stat. § 72A.201, subd. 6(14) (2006). The glass repair companies have not shown how the anti-assignment clauses at issue violate or detract from the public policy now codified or how a refusal to enforce the clauses would fail to serve public policy.

## DECISION

Therefore, we affirm the district court decisions in *Star Windshield Repair, Inc. v. W. Nat'l Ins. Co.* (A07–216) and *Auto Glass Express v. Austin Mut. Ins. Co.* (A07–217), and we reverse the district court decision in *State Farm Mut. Auto. Ins. Co. v. Archer Auto Glass* (A07–830).

**Affirmed in part and reversed in part.**