STAR WINDSHIELD REPAIR, INC.,
as assignee for Aaron Helget,
Appellant,

v.

WESTERN NATIONAL INSURANCE
CO., Respondent,

and

The Glass Network, Claimant,

Auto Glass Express, as assignee
for Kathy Heglos, claimant,
Appellant,

v.

Austin Mutual Insurance Company,
Respondent,

and

Archer Auto Glass, as Assignee of
Ronald Hornberg, Appellant,

v.

State Farm Mutual Automobile
Insurance Company,
Respondent,

and

Auto Owners Insurance
Co., Respondent,

v.

Star Windshield Repair, Inc., as Intended Assignee of A & E Construction
Supply, Inc., et al., Appellant.

Nos. A07–216, A07–217,
A07–830, A07–972.

Supreme Court of Minnesota.

July 16, 2009.

Charles J. Lloyd, Joshua P. Brotemarkle, Livgard & Rabuse, P.L.L.P., Minneapolis, MN, for appellants.

Diane B. Bratvold, Jonathan P. Schmidt, Briggs and Morgan, P.A., Minneapolis, MN, for respondent Western National Insurance Company.

Steven R. Kluz, Stoel Rives LLP, Minneapolis, MN, for respondent Austin Mutual Insurance Company.

Katherine A. McBride, Leatha G. Wolter, Jenneane L. Jansen, Meagher & Geer, P.L.L.P., Minneapolis, MN, for respondent State Farm Mutual Automobile Insurance Company.

William A. Moeller, Beth A. Serrill, Blethen, Gage & Krause, PLLP, Mankato, MN, for respondent Auto Owners Insurance Company.

Dale O. Thornsjo, Stacey A. Molde, Johnson & Condon, P.A., Minneapolis, MN, for amici curiae The Insurance Federation of Minnesota and The Property Casualty Insurers Association of America.

Leny K. Wallen–Friedman, Paul M. Floyd, Wallen–Friedman & Floyd, P.A., Minneapolis, MN, for amicus curiae Progressive Insurance Company.

## OPINION

PAGE, Justice.

The issues in this appeal arise from four district court cases between auto glass vendors and insurance companies. The appellants are Star Windshield Repair, Inc., The Glass Network and Auto Glass Express (AGE), and Archer Auto Glass (collectively, the "auto glass vendors"). The respondents are Western National Insurance Company, Auto Owners Insurance Company, Austin Mutual Insurance Company, and State Farm Mutual Automobile Insurance Company (collectively, the "insurers"). Two separate panels of the Minnesota Court of Appeals, ruling in favor of the insurers, held that the presence of an auto insurance policy's anti-assignment clause precludes policyholders from assigning the right to post-loss proceeds in auto glass repair claims. *Auto Owners Ins. Co. v. Star Windshield Repair, Inc.*, 743 N.W.2d 329, 331 (Minn.App.2008); *Star Windshield Repair, Inc. v. W. Nat'l Ins. Co.*, 744 N.W.2d 237, 238 (Minn.App. 2008). We granted the auto glass vendors' petitions for review on the validity of post-loss assignments of insurance proceeds, and we consolidated the cases for oral argument and decision. We reverse the court of appeals' decisions and remand to the district court in each of the four cases for further proceedings consistent with this opinion.

The facts underlying each of the cases are substantially the same. In each case, an insured vehicle incurred windshield damage, and an auto glass vendor repaired the windshield. The insured policyholder assigned his or her claim for insurance proceeds to the auto glass vendor, which then billed the respective insurer directly. Each insurance policy contained an anti-assignment clause.[1] In each case, the in-

1. The anti-assignment clause in Western National's policy reads: "Your rights and duties

surer paid the auto glass vendor less than the amount billed,[2] and each of the auto glass vendors subsequently petitioned for arbitration.

In three of the cases, the arbitrators made an award in the auto glass vendors' favor. In two of those cases, the district court vacated the arbitrators' award, while in the third case, the award was affirmed.[3] After consolidating the cases, the court of appeals agreed with the two district courts that vacated the arbitration award, holding that the anti-assignment clauses in the respective insurance policies prohibit assignment of the policies as well as the loss proceeds. *Western National*, 744 N.W.2d at 241.

In the fourth district court case, the district court issued an injunction precluding arbitration.[4] The court of appeals affirmed the district court's grant of summary judgment, concluding "that a nonassignment clause can limit the assignment of postloss insurance proceeds, such as

the amount due for the windshields in this case." *Auto Owners*, 743 N.W.2d at 337.

■■■ The issues raised in these cases require that we interpret language from automobile insurance policies. The interpretation of an insurance policy is a question of law as applied to the facts presented. *See Meister v. W. Nat'l Mut. Ins. Co.*, 479 N.W.2d 372, 376 (Minn.1992). When there are no disputed material facts, we independently review a lower court's interpretation of the insurance policy. *Id.* In addition, an insurance policy is subject to the statutory law of the state. *See Bobich v. Oja*, 258 Minn. 287, 294, 104 N.W.2d 19, 24 (1960). The Minnesota Legislature has enacted a comprehensive scheme covering automobile insurance. Thus, we begin our analysis with a review of legislation relating to auto glass repair.

The legislature enacted the Minnesota No–Fault Automobile Insurance Act "to

---

under this policy may not be assigned without our written consent." The anti-assignment clause in Austin Mutual's policy reads: "Your rights and duties under this policy may not be assigned without our written consent." The anti-assignment clause in State Farm's policy reads: "No change of interest in this policy is effective unless we consent in writing." The anti-assignment clause in Auto Owners' policy reads: "No interest in this policy may be assigned without our written consent."

**2.** The auto glass vendors define "shortpay" as the difference between the amount billed by a glass vendor and the amount actually paid by an insurer on the claim.

**3.** In *Star Windshield Repair, Inc. v. Western National Insurance Co.*, Star Windshield billed Western National $742.69. Western National paid $530.45. The arbitrator awarded Star Windshield the shortpay plus interest, charged Western National $350 in fees, and denied a request to modify the award. The district court vacated the award, ruling that "the parties specifically contracted to not allow the assignment of the insured's rights."

In *The Glass Network & Auto Glass Express v. Austin Mutual Insurance Co.*, AGE billed Austin $508.19. Austin paid $373.37. The arbitrator awarded AGE the shortpay plus interest and charged Austin $350 more in fees. The district court vacated the award, ruling that the insured's assignment was expressly prohibited by the insurance policy.

In *State Farm Mutual Automobile Insurance Co. v. Archer Auto Glass*, Archer billed State Farm $815.32. State Farm paid $290.13. The arbitrator awarded Archer $350.14, charged State Farm $100 in fees and Archer $50. The district court affirmed the award.

**4.** In *Auto Owners Insurance Co. v. Star Windshield Repair, Inc.*, Auto Owners filed a complaint for declaratory judgment against Star Windshield, claiming that Star Windshield did not have standing to proceed to arbitration with respect to ten shortpay claims. On summary judgment, the district court granted Auto Owners' motion and permanently enjoined the ten arbitrations.

speed the administration of justice, [and] to ease the burden of litigation." Minn. Stat. § 65B.42(4) (2008). The No–Fault Act requires the submission of all claims "$10,000 or less . . . for no-fault benefits or comprehensive or collision damage coverage" to binding arbitration. Minn.Stat. § 65B.525, subd. 1 (2008); Minn. No–Fault Arbitration R. 6 (2008). Under Minn.Stat. § 65B.134 (2008), any auto insurance policy offering comprehensive coverage "must provide at the option of the insured *complete coverage for repair or replacement of all damaged safety glass* without regard to any deductible or minimum amount." (Emphasis added.) Thus, we have stated that repairs for auto glass damage fall "under the umbrella of 'comprehensive coverage.'" *Ill. Farmers Ins. Co. v. Glass Serv. Co.,* 683 N.W.2d 792, 798 (Minn. 2004). Without considering the effect of anti-assignment clauses in auto insurance policies, we have held that claims for insurance proceeds by auto glass vendors "are subject to no-fault arbitration after assignment." *Id.* at 805.

Further, the legislature has paid particular attention to the relationship between insurers and auto glass vendors. Under Minnesota's Unfair Claims Settlement Practice Act (UCSPA),[5] Minn.Stat. §§ 72A.17–.32 (2008), an automobile insurer must, with respect to auto glass repairs, "provide payment to the insured's chosen vendor based on a competitive price that is fair and reasonable within the local industry at large." Minn.Stat. § 72A.201, subd. 6(14). Failure to do so is an unfair settlement practice. *Id.* Section 72A.201, subdivision 6, also prohibits insurers from inducing a policyholder to choose a particular auto glass vendor. *Id.,* subd. 6(15)-(16). Therefore, under the UCSPA, the insured is free to choose any auto glass vendor, and the insurer must pay that vendor a competitive price. At the same time, an anti-incentive statute prohibits auto glass vendors from enticing policyholders with items of monetary value if their services are actually paid for by an insurer. Minn.Stat. § 325F.783(a) (2008).

The insurers contend that the auto insurance policies preclude the insured from assigning the right to post-loss proceeds. In particular, the insurers argue that their policies' anti-assignment clauses prohibit auto glass vendors from arbitrating the amount of disputed claims because the clauses preclude the assignment of rights, duties, and interests in the policies. Instead, the insurers claim that the policyholders themselves must be a party to any arbitration.

The insurers contend that their interpretation of the anti-assignment clauses is supported by our decision in *Travertine Corp. v. Lexington–Silverwood,* 683 N.W.2d 267 (Minn.2004). In *Travertine,* we held that an "anti-assignment clause is a valid and enforceable term" that precludes the assignment of a right to payment under a contract. *Id.* at 269, 274. But the contract at issue in *Travertine* was a management contract rather than an insurance policy. *Id.* at 269. While we have stated that insurance policies follow general principles of contract law unless there are statutory laws to the contrary, *Bobich,* 258 Minn. at 294, 104 N.W.2d at 24, we conclude our analysis in *Travertine* is not helpful in resolving the issues presented because the statutory framework regarding auto glass insurance, as laid out above, makes the insurance policies at issue sufficiently different from management contracts. *See Alpine Glass, Inc. v. Ill.*

---

**5.** Glass vendors cannot bring a claim against the insurers under the UCSPA. "[A] private party does not have a cause of action against an insurer for a violation of the [UCSPA]." *Morris v. Am. Family Mut. Ins. Co.,* 386 N.W.2d 233, 233 (Minn.1986).

*Farmers Ins. Co.,* No. 06–CV–1148, 2006 WL 3486996, at \*12–13 (D.Minn.2006) (recognizing the unique framework of auto glass insurance); *see also Life Rehab Servs., Inc. v. Allied Prop. & Cas. Ins. Co.,* 616 F.Supp.2d 924 (D.Minn.2007) (distinguishing auto glass insurance from other insurance policies).

Because the legislature has spoken so extensively on auto glass insurance policies, we need not address today the broader question of whether anti-assignment clauses in insurance policies are, as a rule, enforceable.[6] Rather, our discussion is limited to the question of whether anti-assignment clauses in automobile insurance policies can be read to bar post-loss assignments of proceeds for auto glass repair claims or the right of auto glass vendors to arbitrate disputes with insurers over those proceeds. The statutory framework requires insurers, upon the request of the insured, to extend comprehensive coverage to cover auto glass repairs. Minn.Stat. § 65B.134. When an insured makes a claim for auto glass that has been repaired, the framework requires the insurers to make a direct payment to the insured's chosen auto glass vendor. Minn. Stat. § 72A.201, subd. 6(14). The insurer must pay a competitive price. *Id.* The framework also requires the arbitration of disputes about that competitive price. Minn.Stat. § 65B.525, subd. 1. This is the

payment process created by the Minnesota Legislature, and as we stated in *Illinois Farmers,* "Minnesota's statutory scheme for automobile insurance essentially removes the auto glass customer from the payment process." 683 N.W.2d at 796.

Based on this statutory scheme, we conclude that the legislature intended for auto glass vendors to be able to arbitrate their shortpay claims against insurers. To the extent the insurers urge an interpretation of their insurance policies' anti-assignment clauses that conflicts with the statutory framework, their interpretation is unenforceable. *See id.* at 802 ("If a term in an insurance contract conflicts with Minnesota statutes, the contract term becomes unenforceable."). Therefore, because the statutory scheme removes the policyholder from the payment process for auto glass claims and requires disputes to be arbitrated, we hold that the anti-assignment clauses in the auto insurance policies do not preclude a policyholder's assignment of post-loss proceeds to an auto glass vendor.[7]

Reversed and remanded to the district courts.

MAGNUSON, C.J., MEYER, J., and DIETZEN, J., took no part in the consideration or decision of this case.

ANDERSON, P. HUNTER, Acting Justice.\*

---

**6.** We note, however, that our decision today fits squarely with the majority rule, which limits the validity of anti-assignment clauses to pre-loss assignments in insurance contracts. *Globecon Group, LLC v. Hartford Fire Ins. Co.,* 434 F.3d 165, 170–71 (2d Cir.2006) (post-loss assignments were transfers of "a cause of action rather than a particular risk profile"); *R.L. Vallee, Inc. v. Am. Int'l Specialty Lines Ins. Co.,* 431 F.Supp.2d 428, 435 (D.Vt.2006) ("[O]nce the loss occurs, the insurer is obligated to cover the loss agreed to under the terms of the policy. This obligation is not altered when the claimant is not the

party who was originally insured."). Allowing auto glass vendors to arbitrate shortpay claims does not increase the insurers' risk of loss, and our decision today does not affect the bargain struck between the insurer and the insured.

**7.** Nothing in the record suggests that champerty and maintenance are at issue in this appeal or that the auto glass companies are acting as intermeddlers.

\* Appointed pursuant to Minn. Const. art. VI, § 2, and Minn.Stat. § 2.724, subd. 2 (2008).

## CONCURRENCE

ANDERSON, G. BARRY, Justice (concurring).

I concur in the result reached by the majority but would use a different analytical framework based on traditional interpretations of anti-assignment language in insurance policies.

I begin with the observation that most jurisdictions have interpreted insurance policy anti-assignment language as limited to pre-loss circumstances. 5A John Alan Appleman & Jean Appleman, *Insurance Law and Practice* § 3458 (rev. ed. 1970). The majority notes that most jurisdictions limit the validity of anti-assignment clauses to pre-loss assignments in insurance contracts, but instead follows a statutory interpretation analysis. Because I conclude that the reasoning used in the majority of jurisdictions limiting the validity of anti-assignment clauses to pre-loss assignments is persuasive, I would adopt that interpretation here.

The Ninth Circuit explained:

Risk characteristics of the insured determine whether the insurer will provide coverage, and at what rate. An assignment could alter drastically the insurer's exposure depending on the nature of the new [policyholder]. "No assignment" clauses protect against any such unforeseen increase in risk. When the loss occurs before the transfer, however, the characteristics of the [assignee] are of little importance: regardless of any transfer the insurer still covers only the risk it evaluated when it wrote the policy.

*N. Ins. Co. of N.Y. v. Allied Mut. Ins. Co.*, 955 F.2d 1353, 1358 (9th Cir.1992). Similarly the Second Circuit reasoned that "once the insured-against loss has occurred, the policy-holder essentially is transferring a cause of action rather than a particular risk profile." *Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 170–71 (2d Cir.2006).[1]

Furthermore, although it is not controlling, we have spoken persuasively on this general issue. In *Windey v. N. Star Farmers Mut. Ins. Co.*, we stated:

Assignment, after loss, of the proceeds of insurance does not constitute an assignment of the policy, but only of a claim or right of action on the policy. Such an assignment does not void the policy under a provision that if it is assigned without the insurer's consent it shall become void.

231 Minn. 279, 283, 43 N.W.2d 99, 102 (1950).

The advantage of the approach used here is that it does not involve detailed statutory interpretation, does not involve our court in arguably rewriting insurance policies, and is consistent with not only our decision in *Windey* but more generally with our long-standing approval of permitting assignment of choses in action.[2]

---

1. For more authority supporting the majority rule see *Conrad Brothers v. John Deere Insurance Co.*, 640 N.W.2d 231, 237 (Iowa 2001), which lists the many jurisdictions that have adopted some version of the majority rule. *See also*, Restatement (Second) of Contracts § 322(2)(a) ("A contract term prohibiting assignment of rights under the contract, unless a different intention is manifested, does not forbid assignment of a right to damages for breach of the whole contract or a right arising out of the assignor's due performance of his entire obligation.").

2. A chose in action is "[t]he right to bring an action to recover a debt, money, or thing." *Black's Law Dictionary* 258 (8th ed. 2004). *See BAACT Corp. v. Executive Aero, Inc.*, 312 Minn. 143, 147, 251 N.W.2d 107, 109 (1977) (holding that a chose in action was duly assigned); *Leuthold v. County of Redwood*, 206 Minn. 199, 202, 288 N.W. 165, 167 (1939) (" 'The law of this state is that an assignment

I would hold that the anti-assignment clauses in insurance contracts before us do not apply to post-loss assignments. Because such a holding would resolve the issue before us, I would not analyze the statutory provisions.

GILDEA, J. (concurring).

I join in the concurrence of Justice G. Barry Anderson.

of a chose in action is valid and complete in itself upon the mutual assent of the assignor and assignee, without notice to the debtor.' ")

(quoting *Lewis v. Bush,* 30 Minn. 244, 245, 15 N.W. 113, 113 (1883)).