OPINION
JOHNSON, Judge.
This appeal presents the ' question whether an assignment of a no-fault insurance claim to a medical provider is valid and enforceable if the applicable insurance policy states that assignments are forbidden. Applying the caselaw concerning anti-assignment provisions in insurance policies and the plain language of the Minnesota No-Fault Automobile Insurance Act, Minn.Stat. §§ 65B.41-.71 (2014), we conclude that the assignments at issue in this appeal are invalid and unenforceable for purposes of the No-Fault Act because the applicable automobile insurance policy contains an anti-assignment provision and because the assignments were made before the assignors’ medical provider billed the assignors for the medical services on which the assignments are based. Therefore, we reverse the judgment of the district court.
FACTS
Stand Up Multipositional. Advantage MRI, P.A. (SUMA), operates a clinic in Golden Valley that performs magnetic-resonance-imaging scans (MRIs). Whenever a person asks SUMA to perform an MRI, SUMA asks the person to sign a one-page assignment and lien agreement. The third paragraph of one such agreement states as follows:
I hereby assign to [SUMA] to the extent permitted by law', but only to the extent of my Charges, all of my claims to, rights to, and interests in, Proceeds, whether resolved or unresolved, including without limit ownership rights, which I may have now or in the future relating directly or indirectly to my Charges, condition, or causes of my condition (“Claims to Proceeds”), including without limit any and all causes of action, receivables, payment intangibles, and remedies that I might have against or with respect to any Payer now or in the future, and the right to prosecute, seek, settle, or otherwise resolve such Claims to Proceeds either in my name or in [SUMA’s] name and as [SUMA] otherwise sees fit. I agree that this assignment shall be effective as of the date and time the initial cause of my condition occurred. I further intend for this Assignment & Lien to create a security interest under the applicable Uniform Commercial Code. Accordingly, I hereby grant to [SUMA] a primary, non-contingent security interest in all of my Claims to Proceeds to the extent permitted by law for the purpose of securing payment of my Charges, the attachment and perfection of which shall relate back to, and be effective as of, the date and time that-the initial cause of my condition occurred. I further authorize [SUMA] to file the form(s) normally filed with the secretary of state or other governmental agency relating to such security interests, and to make such filings in all -relevant jurisdictions as [SUMA] sees fit in' its sole discretion. I agree that once payment in-fnll has been made towards all outstanding Charges *24 to the full extent permitted by law or contract and also as defined by my agreement with [SUMA], such security interest shall be removed or terminated solely upon my written request sent through the U.S. Postal Service Certified Mail. Consistent with these terms, I hereby direct any and all Payers, to pay the Proceeds directly to, immediately to, and exclusively in the name of, [SUMA] to the full extent of my Charges. To the extent that any law, including -without limit a lien statute, purports to limit, reduce, or modify the distribution of Proceeds in any manner inconsistent with this Assignment & Lien including without limit through the reservation of a portion of the Proceeds exclusively to me, I hereby waive such limits, reductions, or modifications. Such waiver shall not adversely affect or prejudice any rights which [SUMA] may have and elect to exercise under said law.
(Emphases added.)
American Family Insurance Company issues automobilé insurance policies to persons residing in Minnesota. American Family has issued automobile insurance policies that provide coverage for persons who are parties to this action. Those policies include the following language: “Interest in this policy may be assigned only with our written consent.”
In July 2013, SUMA commenced this action against 16 defendants. The first defendant named in the complaint is American Family. SUMA seeks to recover damages from American Family for its alleged failure to make payment' directly to SUMA pursuant to assignments that SUMA received from certain persons who were- entitled to no-fault benefits from American Family. SUMA also sought to recover statutory interest, attorney fees, and costs.
SUMA also named 15 individuals as defendants. Eight individual defendants are persons who were injured in automobile accidents and received MRI services from SUMA. Seven individual defendants are attorneys who represented the eight patients in their efforts to recover compensation for the injuries they sustained in automobile accidents. SUMA’s claims against the 15 individual defendants are not directly at issue in this appeal. Rather, this appeal is based on the rights and obligations of American Family and SUMA with respect to medical expenses incurred by three of SUMA’s former patients (Teri Baker, Prisly Arredondo Cerna, and Tiffa-ni Mazzie). Each of them was injured in an automobile accident, sought an MRI from SUMA, was asked by SUMA to sign an assignment and lien agreement, and did so. Each submitted a claim to American Family for reimbursement of the expenses of the MRI performed by SUMA, in amounts ranging from $5,089.80 to $5,793.60, but had the claim denied by American Family. Each pursued no-fault insurance proceeds in arbitration, received an arbitration award, and received payment from American Family to satisfy the arbitration award.
In August 2014, American Family moved for summary judgment on SUMA’s claims with respect to the eight patients who received MRIs. In the course of briefing, SUMA conceded that summary judgment in favor of American Family was appropriate with respect to the medical expenses incurred by four of the eight patients (Vincent Tillotson, Léila Said, Landon Barakow, and Yusuf Osman). At the hearing on American Family’s motion, SUMA orally requested summary judgment in its favor on its claims against American Family. American Family did not object to the oral nature or the timeliness of SUMA’s motion.
*25 In November 2014, the district court issued an interim order on American Family’s and SUMA’s respective motions for summary judgment. The district court granted American Family’s motion in part based on SUMA’s concession concerning Tillotson, Said, .Barakow, and Osman. The district court also granted American Family’s motion in part concerning one patient (Lebertha Porter) for whom there was no evidence in the record of an executed assignment and lien agreement. .With respect to SUMA’s claims against American Family concerning Baker, Cerna, and Mazzie, the district court reasoned that their assignments are valid but that the enforceability of those assignments depends on whether American Family had notice of the' assignments. The district court requested supplemental briefing arid additional evidence on that issue. SUMA and American Family subsequently submitted supplemental briefing and,additional evidence.
In April 2015, the district court determined that American Family had notice of Baker’s, Cerna’s,- and Mazzie’s respective assignments to SUMA. Consequently, the district court denied American Family’s motion for summary judgment and granted SUMA’s motion, for summary judgment on SUMA’s claims against American Family concerning the medical expenses incurred by Baker, Cerna, and Mazzie. The district court, however,. declined to award SUMA statutory interest, attorney fees, or costs.
American Family filed a timely notice of appeal,[1] American Family argues that the district court erred for three reasons. American Family argues that the assignments to SUMA are invalid and unenforceable because Baker, Cerna, and Mazzie executed their assignments before they incurred a loss for purposes of the No-Fault Act. American Family argues that SUMA’s alleged liens are invalid under article 9 of the U.C.C. And American Family argues that, to the extent that SUMA has a valid assignment of a claim for medical expenses, SUMA is required by the No-Fault Act to pursue each claim of less than $10,000 in a separate arbitration. See MinmStat. § 65B.525, subd. - 1 (2014). SUMA filed a timely notice of related appeal. See Minn. R. CivApp. P. 106. SUMA challenges the district court’s judgment by arguing that the district court erred by not awarding statutory’interest, attorney fees, or costs.
ISSUE
Are Baker’s, Cerna’s, and Mazzie’s assignments of no-fault claims to SUMA valid and enforceable in light of the anti-assignment provision in American Family’s automobile insurance policies and the undisputed fact that Baker, Cerna, and Maz-zie executed their respective assignments before SUMA billed them for medical services?
ANALYSIS
A district court must grant a motion for summary judgment if the’ “pleadings, depositions, answers to interrogatories, and admissions ón file, together with' the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law.” Minn. R. Civ. P. 56.03. A genuine issue of material fact exists if a rational trier of fact, considering the record as a whole, could find for the nonmov-ing party. Frieler v. Carlson Mktg. Grp., 751 N.W.2d 558, 564 (Minn.2008). This court applies a de novo standard of review to the district court’s legal conclusions on summary judgment and views the evidence in-the light most favorable to the party against whom summary judgment was granted. Commerce Bank v. West Bend *26 Mid. Ins. Co., 870 N.W.2d 770, 773 (Minn. 2015).
We begin by considering American Family’s argument that the district court erred by determining that the assignments given by Baker, Cerna, and Mazzie to SUMA are valid and enforceable.[1] In general, an anti-assignment provision in a contract is valid and enforceable, thereby defeating an otherwise valid assignment. Travertine Corp, v. Lexington-Silverwood, 683 N.W.2d 267, 270, 274 (Minn.2004). But anti-assignment provisions in insurance policies are subject to different treatment. In Minnesota, an anti-assignment provision in an insurance policy is unenforceable with respect to a post-loss assignment, thereby making a post-loss assignment valid and enforceable. Windey v. North Star Farmers Mút. Ins. Co., 231 Minn. 279, 283, 43 N.W.2d 99, 101-02 (1950). In the majority of states, an anti-assignment provision in an insurance policy is enforceable with respect to a pre-loss assignment, -thereby making a pre-loss assignment invalid and unenforceable. See Star Windshield Repair, Inc. v. Western Nat. Ins. Co., 768 N.W.2d 346, 349-50 & n. 6 (Minn.2009); see also id. at 351 & n. 1 (G.B. Anderson, J., concurring). The Minnesota Supreme Court has hot expressly adopted the majority rule. See id. at 349-50 & n. 6. But no member of the supreme court in Star Windshield expressed disapproval of the majority rule. See id. at 349-50 & n. 6; id. at 351 & n. 1 (G.B. Anderson, J,, concurring). We interpret Star Windshield to be a strong .indication that the supreme court would apply the majority rule with respect to pre-loss assignments if asked to determine the va *27 lidity and enforceability of an anti-assignment provision in an insurance policy. Thus, we will apply the majority rule to the anti-assignment provision in this case.
Accordingly,, to resolve American Family’s argument, we must determine whether the assignments at issue in this case are pre-loss assignments or post-loss assignments. The answer to that question depends on when Baker, Cerna, and Maz-zie sustained a loss for purposes of their no-fault claims. The No-Fault Act speaks directly to the issue. The pertinent statute states, in relevant part, “Loss accrues not when injury occurs, but as ... medical ... expense is incurred.”’ Minn.Stat.[1] § 65B.54, subd. 1. The supreme court’s caselaw defines the timing of such a loss more specifically: “an injured person incurs medical expense [under the No-Fault Act] as he or she receives hills for medical treatment.” Stout v. AMCO Ins. Co,, 645 N.W.2d 108, 113 (Minn.2002) (emphasis added). The supreme court applied this principle recently by concluding that a person insured by an automobile insurance policy “incurred á medical-expense loss at the moment she was billed for medical services.” State Farm Mut. Auto. Ins. Co. v. Lennartson, 872 N.W.2d 524, 530 (Minn.2015) (emphasis added). The supreme court in Lennartson stated further, “Our analysis of ‘loss’ in Stout applies to the language of the No-Fault Act; it is not limited to the specific facts of [Stout ].” Id.. at 530. In light of the plain language of the No-Fault Act and the supreme court’s opinions in Stout and Lennartson, a patient’s assignment of a no-fault insurance claim to a medical provider is invalid and unenforceable if the applicable automobile insurance policy forbids such an assignment and if the'patient makes the assignment before the medical provider bills the patient for medical services.
The only remaining question is whether SUMA billed Baker, Cerna, and Mazzie before or after they executed their respective assignment agreements. SUMA submitted an affidavit into the summary-judgment record that states that “before any auto accident victim receives a scan from [SUMA], [SUMA] requires the auto accident victim to execute an Assignment and Lien,” and that “[u]nless the patient signs such an Assignment and Lien, the patient does not receive a scan from [SUMA].” The summary-judgment record does not include any evidence stating more specifically that SUMA bills patients for MRIs only after the MRIs are performed. But that is the only reásonable inference in light of the evidence in the summary-judgment record. A genuine issue of material fact does not exist because SUMA’s counsel informed the district court during the motion hearing that the parties agreed that the case should be resolved on cross-motions for. summary judgment. Thus,. given the summary-judgment record in this case, there is no genuine issue of material fact as to when-SUMA billed Baker, Cerna, and Mazzie for their MRIs. The undisputed facts compel the conclusion that SUMA billed Baker, Cerna, and Mazzie after they assigned their respective no-fault claims to SUMA.
Thus,, we conclude that the assignments at issue in this appeal are pre-loss assignments. See Minn.Stat. § 65B.54, subd. 1; Lennartson, 872 N.W.2d at 530; Stout, 645 N.W.2d at 113. Accordingly, the anti-assignment clause in American Family’s automobile insurance policy is valid and enforceable, which means that Baker’s, Cerna’s, and Mazzie’s pre-loss assignments to SUMA are invalid and unenforceable. See Star Windshield, 768 N.W.2d at 349-50 & n. 6; Windey, 231 Minn. at 283, 43 N.W.2d at 101-02; see also Star Windshield, 768 N.W.2d at 351 & n. 1 (G.B. *28 Anderson, J., concurring).[2] Therefore, the district court erred by denying American Family’s motion for summary judgment and granting SUMA’s motion for summary judgment on SUMA’s claim against American Family. In light of that conclusion, we need not consider the parties’ other arguments.
DECISION
The district court erred by denying. American Family’s motion for summary judgment and granting SUMA’s motion for summary judgment on SUMA’s claim against Atnerican Family. For the reasons stated above, American Family is entitled to summary judgment.
Reversed.

. The question whether the assignments, are valid is properly before this court and is the natural starting point of a straightforward analysis of the parties’ respective arguments. Only if that question • were answered in the affirmative would it be necessary to consider whether the assigned claims must be resolved in arbitration, in which case a district court would not have jurisdiction to[1] resolve the claims, ■ See. Minn.Stat, § 65B.525, subd. 1; Illinois Farmers Ins. Co. v. Glass Serv. Co., 683 N.W.2d 792,'800 (Minn.2004). The jurisdictional issué ’depends on the existence of certain predicate facts, such as, in this case, < the validity of the assignments.. No particular , purpose would be servpd by assuming a predicate fact to exist if it does not exist. The district court plainly had jurisdiction to the extent that the district court considered whether the. assignments are valid. See Illinois Farmers,Ins. Co., 683 N.W.2d at 803-05; Femow y. Gould, 835 N.W,2d 8, 11 (Minn. 2013). No party to the appeal has argued otherwise. .Because' we conclude below that the assignments are invalid and unenforceable, we need not consider American Family’s argument based on the mandatory-arbitration provision of the'No-Fault Act, which means that we need not consider whether the district court lacked jurisdiction when it entered judgment on SUMA’s claims.
We note- that SUMA contends that American Family failed to preserve its argument that the assignments are invalid and unenforceable. In its motion for summary judgment, American Family initially ' assumed without conceding the validity of the assignments and sought summary judgment on other grounds. The disputed issues changed, however, when SUMA orally moved for summary judgment in.its favor. The district court thereafter considered the validity of the assignments. Indeed, that issue was the focal point of the district court’s subsequent orders, including the order in which the district court ultimately ruled on American Family's and SUMA’s respective motions. The purpose of the preservation rule is to ensure that an appellate court does not consider ah issue that a district court did not have an opportunity to consider. See Thiele v. Stick, 425 N.W.2d 580, 582-83 (Minn. 1988);' In re Judicial Ditch No. 1, 140 Minn. 1, 3-4, 167 N.W. 124, 125 (1918). In this case, the district court had an opportunity to consider the validity and enforceability of the assignments and actually did so. Thus, given the unusual procedural history of' this case, American Family has not forfeited lire argument .that Baker's, Cerna’s, and Mazzie’s assignments to SUMA are invalid and unenforceable.

. ‘We acknowledge that the court’s conclusion may unsettle SUMA's expectations and the expectations of persons who have given and received assignments similar to the assignments in this case. The court does not reach its conclusion based on the advantages and disadvantages of the various policy-based arguments urged by the parties and by the organizations that submitted amicus briefs. Rather, the court reaches its conclusion by interpreting and applying the plain language of the No-Fault Act and the clear statements in Stout and Lennartson. This is the analysis required by the supreme court’s caselaw. See Lennartson, -872 N.W.2d at 530; Stout, 645 N.W.2d at 113. Only a few months ago, the supreme court applied the same statute in a similar manner and reached a decision that one justice described as "counter-intuitive,” "not necessarily reasonable,” and "inconsistent with the purposes of the No-Fault Act.” Lennartson, 872 N.W.2d at 538 (G.B. Anderson, J., concurring). Yet that justice joined in the court’s opinion and wrote that “it is for the Legislature to address the complications and problems that will flow from the statutory language that the Legislature adopted.” See id. at 539 (G.B. Anderson, J., concurring). Likewise, to the extent that any participant in the no-fault system would prefer a different outcome in this case, the most appropriate means of seeking change is to ask the legislature to amend the act.