STATE OF MINNESOTA

IN SUPREME COURT

A15-0843

Court of Appeals                                                                    Gildea, C.J.
                                                                    Took no part, Chutich, J.

Stand Up Multipositional Advantage
MRI, P.A.,

                                    Appellant,

vs.                                                                    Filed:  January 11, 2017
                                                                    Office of Appellate Courts

American Family Insurance Company, a
Wisconsin corporation,

                                    Respondent,

Michael Schultz, et al.,

                                    Respondents,

Ilya Knyazev, et al.,

                                    Respondents,

Thomas Bennerotte, et al.,

                                    Respondents,

Jed Benjamin Iverson,

                                    Respondent,

Gabriel Johnson,

                                    Respondent,

1

Michael Fay, et al.,

        Respondents,

Brad Ratgen, et al.,

        Respondents,

Landon Barakow,

        Respondent,

Lebertha Porter,

        Respondent.

———————————————

Randall D. B. Tigue, Randall Tigue Law Office, P.A., Fridley, Minnesota, for appellant.

Matthew D. Lutz, Eden Prairie, Minnesota, for respondent American Family Insurance Company.

Michael J. Weber, Weber & Nelson Law Office, PLLC, Minneapolis, Minnesota, for amici curiae Center for Diagnostic Imaging, Minnesota Chiropractic Association, American Chiropractic Association, Minnesota Ambulatory Surgery Center Association, Twin Cities Orthopedics, and Minnesota Medical Group Management Association.

Dale O. Thornsjo, Lance D. Meyer, O'Meara, Leer, Wagner & Kohl, P.A., Minneapolis, Minnesota, for amici curiae The Insurance Federation of Minnesota and The Property Casualty Insurers Association of America.

Jennifer E. Olson, TSR Injury Law, Bloomington, Minnesota, for amicus curiae Minnesota Association for Justice.

Charles J. Lloyd, Livgard & Lloyd PLLP, Minneapolis, Minnesota, for amicus curiae Minnesota Glass Association.

———————————————

SYLLABUS

1.    The district court had subject matter jurisdiction over the case because the issue presented was a question of law.

2.    The anti-assignment clause in an automobile insurance policy prohibits the assignments the policyholders made to their medical provider.

Affirmed.

OPINION

GILDEA, Chief Justice.

At issue in this case is the enforceability of an anti-assignment clause in an automobile insurance policy.  Respondent American Family Insurance Company (American Family) issued automobile insurance policies to respondent-policyholders, who were later injured in automobile accidents.  American Family's policy contained an anti-assignment clause, which became relevant when the policyholders assigned their interests in basic economic loss benefits to their medical provider, appellant Stand Up Multipositional Advantage MRI, P.A. (Stand Up), in order to obtain medical treatment.  Stand Up sued American Family, the policyholders, and the policyholders' attorneys for failing to pay Stand Up directly in accordance with the assignments.  The district court, on cross-motions for summary judgment, concluded that American Family's anti-assignment clause was unenforceable and the assignments to Stand Up were valid.  The court of appeals reversed, determining that American Family's anti-assignment clause was valid and that it prohibited the assignments to Stand Up.  Because we conclude that the anti-assignment clause precludes the assignments, we affirm.

3

This action began after respondents Tiffani Mazzie, Prisly Arredondo Cerna, and Teri Baker (collectively, "policyholders") were injured in separate car accidents.[1] The policyholders had insurance through American Family and the policies contained an anti-assignment clause, which stated that "[i]nterest in this policy may be assigned only with [American Family's] written consent." The parties agree that American Family did not consent to the assignments at issue.

In order to obtain medical treatment, the policyholders assigned their rights and benefits under their policies to Stand Up. Stand Up provides magnetic resonance imaging scans at a clinic in Golden Valley. Before providing imaging services, Stand Up required each policyholder to execute a form entitled, "Authorization and Irrevocable Assignment of Insurance Benefits for Direct Payments by My Payers to Stand Up, PA." The third paragraph of the assignment began:

> I hereby assign to [Stand Up] to the extent permitted by law, but only to the extent of my Charges, all of my rights, remedies, and benefits related to any Payer, including without limit a primary, non-contingent right to receive Proceeds from any Payer, now or in the future, and any and all causes of action that I might have against any Payer now or in the future, the right to prosecute such causes of action either in my name or in [Stand Up's] name,

---

[1] This appeal concerns the rights and obligations of American Family and Stand Up with regard to only these three policyholders. Stand Up originally sued fifteen defendants in addition to American Family. Eight were individuals who were injured in automobile accidents and received imaging services from Stand Up, and seven were attorneys who represented the eight individuals in attempting to recover benefits for medical expenses. Stand Up's claims against defendants other than American Family and the three policyholders (Mazzie, Cerna, and Baker) are not at issue on appeal.

4

and the right to settle or otherwise resolve such causes of action as [Stand Up] sees fit.[2]

The agreement also provided that if a Stand Up patient chose to hire an attorney to assist her in recovering insurance proceeds, that patient could not require Stand Up to reduce its bill by the share of attorney's fees or costs incurred in collecting those proceeds.

After the policyholders executed the assignments, Stand Up treated and billed them. Although the record does not reflect precisely when Stand Up initially billed each policyholder, we agree with the court of appeals' conclusion that the only reasonable inference in light of the record is that Stand Up billed the policyholders after performing the imaging services. *Stand Up Multipositional Advantage MRI, P.A. v. Am. Family Ins. Co.*, 878 N.W.2d 21, 27 (Minn. App. 2016).

Each policyholder submitted a claim to American Family for reimbursement of the medical expenses from Stand Up, but American Family denied medical expense benefits in each case. Each policyholder then pursued mandatory no-fault arbitration pursuant to Minn. Stat. § 65B.525, subd. 1 (2016), and obtained arbitration awards for Stand Up's bill. American Family satisfied the awards by issuing checks in the names of the policyholders and the attorneys who represented the policyholders.[3] American Family did not pay Stand Up "directly," "exclusively," or to the "full extent" of the bills, as the text of the assignment required.

---

[2]    Policyholder Mazzie's assignment, signed by her legal guardian, contained slightly different language. The distinctions are immaterial to the issues on appeal.

[3]    In policyholder Mazzie's case, American Family issued a check on March 26, 2013, in the name of her attorney, her legal guardian, and Stand Up.

Stand Up filed a complaint in Hennepin County District Court against the policyholders, their attorneys, and American Family for failing to make payment directly to Stand Up under the assignments. The complaint also alleged that by paying the arbitration awards directly to the policyholders and attorneys, American Family breached the assignments, breached its fiduciary duties to the policyholders, breached Stand Up's U.C.C. lien, and violated its duty of prompt payment under Minn. Stat. § 65B.54, subd. 1 (2016).

The district court considered cross-motions for summary judgment by Stand Up and American Family. The court determined that American Family's anti-assignment clause was valid. But the court concluded that the clause, as a matter of law, did not prevent the policyholders from assigning their rights to proceeds under the policy to Stand Up. The court reasoned that because the assignments occurred after the automobile accidents, the assignments did not "affect the bargain struck between the insurer and the insured." The court also found that American Family had notice of the assignments to Stand Up. As a result, the court upheld the assignments and granted Stand Up's motion for summary judgment.

On appeal, a divided court of appeals reversed. *Stand Up*, 878 N.W.2d at 28. To determine whether American Family's anti-assignment clause precluded the assignments to Stand Up, the court of appeals applied the rule followed in the majority of jurisdictions: anti-assignment clauses prohibit pre-loss assignments but not post-loss assignments. *Id.* at 27-28. The court concluded that the assignments to Stand Up were pre-loss, because they were made before billing, and so unenforceable due to American Family's anti-assignment

6

clause. *Id.* The court therefore held that American Family was entitled to summary judgment. *Id.* at 28.

Judge Hooten concurred in part and dissented in part. She concluded that the district court lacked subject matter jurisdiction. *Id.* at 28 (Hooten, J., concurring in part, dissenting in part). In the alternative, Judge Hooten would have affirmed the district court's conclusion that the assignments to Stand Up were valid. *Id.* at 33. We granted Stand Up's petition for review.

The primary issue on appeal is whether an anti-assignment clause in an automobile insurance policy prevents a policyholder from assigning basic economic loss benefits under that policy to a medical provider.[4] This issue comes to us from an appeal of a grant of summary judgment. We review a district court's legal conclusions on summary judgment de novo. *Commerce Bank v. W. Bend Mut. Ins. Co.*, 870 N.W.2d 770, 773 (Minn. 2015). The interpretation of the language of an automobile insurance policy is a question of law

---

[4]     The parties' briefs discuss two other issues. First, the parties dispute whether Stand Up obtained a valid and enforceable U.C.C. lien. Because Stand Up did not raise this issue in its petition for review, we decline to reach it here. *See* Minn. R. Civ. App. P. 117, subd. 3(a) (stating that a petition for review must include a "statement of the legal issues sought to be reviewed"); *Tatro v. Univ. of Minn.*, 816 N.W.2d 509, 515 (Minn. 2012) (describing the purpose of this rule as creating "effective appellate review" of the petition for review).

Second, American Family argues that the specific language in the assignments to Stand Up makes them unenforceable. This issue was also not raised in the petition for review and American Family did not petition for cross-review. We have held that respondents need not file a notice of appeal to preserve an argument if that argument was presented below and was an alternative ground on which to affirm a judgment in respondent's favor. *See Day Masonry v. Indep. Sch. Dist. 347*, 781 N.W.2d 321, 331 (Minn. 2010). But American Family did not raise its argument on the validity of Stand Up's assignment language below, so we do not address it here.

that is also subject to de novo review. *See Star Windshield Repair, Inc. v. W. Nat'l Ins. Co.*, 768 N.W.2d 346, 348 (Minn. 2009). Finally, the interpretation of the Minnesota No-Fault Insurance Act, Minn. Stat. §§ 65B.41-.71 (2016), which regulates automobile insurance policies in Minnesota, is also subject to de novo review because it presents a question of law. *See City of Oronoco v. Fitzpatrick Real Estate, LLC*, 883 N.W.2d 592, 595 (Minn. 2016).

## I.

Before turning to the merits, we must determine whether, as Judge Hooten concluded, the district court lacked subject matter jurisdiction over Stand Up's claim.[5] *Stand Up*, 878 N.W.2d at 28 (Hooten, J., concurring in part, dissenting in part). Judge Hooten relied on language in the No-Fault Act that requires mandatory arbitration for claims regarding the payment of certain medical expenses. *Id.*; *see* Minn. Stat. § 65B.525, subd. 1. Assuming that Stand Up was a valid assignee, Judge Hooten determined that Stand Up had only the procedural rights the policyholders had: "to submit their claims to mandatory arbitration." *Stand Up*, 878 N.W.2d at 29. Because Judge Hooten concluded that Stand Up's claim should have been submitted to arbitration, she reasoned that the district court lacked subject matter jurisdiction to resolve the claim. The court of appeals majority disagreed and held that the district court "plainly had jurisdiction to the extent that the district court considered whether the assignments are valid." *Id.* at 26 n.1.

---

[5]     Although Stand Up argues that American Family raised the issue of subject matter jurisdiction for the first time on appeal, we have recognized that the question of subject matter jurisdiction can be raised at any time. *McCullough & Sons, Inc. v. City of Vadnais Heights*, 883 N.W.2d 580, 585 (Minn. 2016).

We agree with the court of appeals majority that the district court had jurisdiction to determine whether Stand Up's assignments are valid. No-fault arbitrators are " 'limited to deciding questions of fact, leaving the interpretation of law to the courts.' " *Fernow v. Gould*, 835 N.W.2d 8, 11 (Minn. 2013) (quoting *Weaver v. State Farm Ins. Cos.*, 609 N.W.2d 878, 882 (Minn. 2000)). In other words, " 'questions that go "not to the merits of a claim but to whether a claim exists" should be decided by the district court.' " *Id.* (quoting *W. Nat'l Ins. Co. v. Thompson*, 797 N.W.2d 201, 206 (Minn. 2011)); *see also State Farm Mut. Auto. Ins. Co. v. Lennartson*, 872 N.W.2d 524, 534 (Minn. 2015) (stating that the issue in a no-fault claim is " 'whether [the insurer] is required to pay no fault benefits' under the insurance policy and the No-Fault Act" (alteration in original) (quoting *Nelson v. Am. Family Ins. Grp.*, 651 N.W.2d 499, 511 (Minn. 2002))). This limitation is meant to create consistency in the interpretation of the No-Fault Act. *Fernow*, 835 N.W.2d at 11.

Stand Up's arguments do not go to the merits of a no-fault arbitration claim—i.e., whether Stand Up's bills should be covered by American Family's policy. This case instead presents a question of law: whether the assignments to Stand Up are valid in light of the anti-assignment clause in American Family's insurance policy. Because the case presents a question of law, we hold that the district court had subject matter jurisdiction.

II.

We turn next to the merits of the parties' arguments regarding the anti-assignment clause in the American Family insurance contract. Stand Up urges us to hold that the clause does not prohibit the assignments it received from the policyholders. For its part, American

9

Family asks us to invalidate the policyholders' assignments under the anti-assignment clause.

We have not resolved "whether anti-assignment clauses in insurance policies are, as a rule, enforceable," *Star Windshield*, 768 N.W.2d at 350. But as a general principle of contract law, an anti-assignment provision in a contract is valid and enforceable, and operates to defeat an otherwise valid assignment. *Travertine Corp. v. Lexington-Silverwood*, 683 N.W.2d 267, 270, 274 (Minn. 2004) (addressing assignments in the context of a management contract). The purpose of an anti-assignment clause is to shield the contracting party from dealing with parties with whom he or she has not chosen to do business. *Id.* at 271. No "magic words" are needed to create an anti-assignment clause. *Id.* at 272. As long as "there is something in the terms of the contract manifesting the intention of the parties that it shall not be assigned," the contract is not assignable. *Wilkie v. Becker*, 268 Minn. 262, 267, 128 N.W.2d 704, 707 (1964) (citation omitted) (internal quotation marks omitted). American Family's anti-assignment clause, which notes that "[i]nterest in this policy may not be assigned without our written consent," unambiguously demonstrates the intention of the parties that the benefits not be assigned. *See, e.g.*, *Life Rehab Servs., Inc. v. Allied Prop. & Cas. Ins. Co.*, 616 F. Supp. 2d 924, 926 (D. Minn. 2007) (determining that such language is clear and unambiguous).

Amici curiae the Insurance Federation of Minnesota and the Property Casualty Insurers Association of America discuss the policy considerations favoring the *Travertine* approach. The amici contend that *Travertine* preserves freedom of contract principles and applying its approach would create a uniform framework for analyzing all types of

10

assignments, not just those arising under the No-Fault Act. The Colorado Supreme Court relied on similar public policy considerations when it held that anti-assignment clauses in no-fault automobile insurance policies are enforceable. *Parrish Chiropractic Ctrs., P.C. v. Progressive Cas. Ins. Co.*, 874 P.2d 1049, 1054 (Colo. 1994) (relying on principles such as the freedom of contract and the right of the insurer to deal only with parties with whom it contracted). Under *Travertine*'s rule, American Family's anti-assignment clause would be enforceable and, as a result, would preclude the assignments to Stand Up.

But we have not enforced contractual provisions when they conflict with statute or public policy. *See Shank v. Fid. Mut. Life Ins. Co.*, 221 Minn. 124, 130, 21 N.W.2d 235, 238 (1945). For example, in *Star Windshield*, we did not enforce the contract's anti-assignment clause because to do so would conflict with provisions of state statutes. *Star Windshield*, 768 N.W.2d at 350. In contrast to *Star Windshield*, the statutory provisions of the No-Fault Act applicable here—do not conflict with American Family's anti-assignment clause. The Act requires that automobile insurance policies provide basic economic loss benefits, Minn. Stat. § 65B.49, subd. 2. Such benefits offer reimbursement for six types of losses a person can suffer as a result of an injury from the maintenance or use of a motor vehicle, including "$20,000 for medical expense loss." Minn. Stat. § 65B.44, subd. 1(a). The No-Fault Act, however, does not specifically address assignments of basic economic loss benefits.[6]

---

[6] The No-Fault Act provides that "[m]edical . . . benefits may be paid by the reparation obligor directly to persons supplying . . . services . . . to the claimant." Minn. Stat. § 65B.54, subd. 1. But Stand Up did not directly bill American Family and it does

11

Although the No-Fault Act does not provide a statutory basis for disregarding American Family's express anti-assignment provision, the parties raise several public policy considerations. *Cf. Yang v. Voyagaire Houseboats, Inc.*, 701 N.W.2d 783, 793 (Minn. 2005) (declining to enforce exculpatory and indemnification clauses in a rental agreement that violated public policy). As Stand Up argues, allowing assignments to medical providers supports the No-Fault Act's purpose of "encourag[ing] appropriate medical and rehabilitation treatment of the automobile accident victim by assuring prompt payment for such treatment." Minn. Stat. § 65B.42(3). In addition, honoring the assignment here furthers the policy of free alienation of choses in action. *See Townsend v. Fenton*, 30 Minn. 528, 530, 16 N.W. 421, 421 (1883). On the other side of the policy equation, however, is the freedom of contract principle discussed above. These competing policy considerations therefore do not provide a clear path for resolution of the issue presented.

The parties urge us to look at cases outside Minnesota for examples of how other courts have resolved this issue. The majority of jurisdictions hold that anti-assignment clauses in insurance policies outside of the no-fault context preclude pre-loss assignments, but not post-loss assignments. *Star Windshield*, 768 N.W.2d at 349-50 & n.6; 3 Jeffrey E. Thomas & Francis J. Mootz, III, *New Appleman on Insurance Law Library Edition* § 16.05[2][c] (2016). Some of these courts reach this conclusion based on a statute, *see, e.g.*, *Bolz v. State Farm Mut. Auto. Ins. Co.*, 52 P.3d 898, 908 (Kan. 2002) (concluding that

not argue that this provision conflicts with the anti-assignment clause in American Family's policy. Accordingly, we do not consider this provision further.

Kansas' no-fault act encompassed a statutory right permitting individuals to assign their rights to reimbursement for medical services under accident and health insurance policies), while others rely on public policy to make that determination, *see, e.g.*, *Wehr Constructors, Inc. v. Assurance Co. of Am.*, 384 S.W.3d 680, 688 (Ky. 2012) (relying on the public policy disfavoring restraints on alienation of choses in action).[7]

Courts following the majority rule reason that the justification for an anti-assignment clause no longer applies after the loss has happened. This is so, according to these courts, because anti-assignment clauses, in effect, protect insurers against unforeseen increases in risk that arise from an assignment of coverage to a new insured. *See Conrad Bros. v. John Deere Ins. Co.*, 640 N.W.2d 231, 237 (Iowa 2001). Before the loss occurs, an assignment from the insured to another individual can alter the insurer's exposure to risk. *R.L. Vallee, Inc. v. Am. Int'l Specialty Lines Ins. Co.*, 431 F. Supp. 2d 428, 435 (D. Vt. 2006). After the loss occurs, however, the insurer is already obligated to cover the loss under the terms of the policy. *Id.* In other words, the characteristics of the post-loss assignee do not affect the insurer's risk. *N. Ins. Co. of N.Y. v. Allied Mut. Ins. Co.*, 955 F.2d 1353, 1358 (9th Cir. 1992).

---

[7] The majority position is consistent with the result we reached in *Star Windshield*, in which we held that an anti-assignment provision in an auto glass insurance policy did not bar a post-loss assignment. 768 N.W.2d at 349-50. We noted that our decision "fit[] squarely" within the majority rule. *Id.* at 350 n.6. *Star Windshield* does not, however, compel a particular result in this case. As noted above, we reached our conclusion in *Star Windshield* because enforcing the anti-assignment clause would conflict with the statutory framework for auto glass insurance. 768 N.W.2d at 350. In particular, that framework removed policyholders from the payment process for auto glass claims and required disputes to be arbitrated. *Id.* Here, on the other hand, there is no conflict between the No-Fault Act and enforcing American Family's anti-assignment clause.

13

Defining when a "loss" occurs under the majority rule is crucial to determining the enforceability of an anti-assignment clause. Most jurisdictions treat "loss" as occurring at the time of the injury that gives rise to an insurance claim. 3 Thomas & Mootz, III, *supra*. The district court applied this definition. But we agree with the court of appeals that Minnesota's No-Fault Act provides the applicable definition of "loss." *See Stand Up*, 878 N.W.2d at 27.

Minnesota Statutes § 65B.43, subd. 7, defines "loss" as "economic detriment resulting from the accident causing the injury, consisting only of medical expense, income loss," and other specified losses. Under the statute, "[l]oss accrues not when injury occurs, but as . . . medical . . . expense is incurred." Minn. Stat. § 65B.54, subd. 1. We have further explained "loss" under the No-Fault Act, stating that a person insured by an automobile insurance policy "incurs medical expense as he or she receives bills for medical treatment." *Stout v. AMCO Ins. Co.*, 645 N.W.2d 108, 113 (Minn. 2002); *see also Lennartson*, 872 N.W.2d at 530 ("Our analysis of 'loss' in *Stout* applies to the language of the No-Fault Act; it is not limited to the specific facts of that case.").

The No-Fault Act's definition of "loss" would apply if we adopted the majority rule in the no-fault context because the Act is unique in its comprehensive regulation of automobile insurance. *See Stout*, 645 N.W.2d at 112 (stating that the No-Fault Act is a "comprehensive and highly-detailed statutory scheme that governs the compensation of persons injured in automobile accidents"); *see also Westfield Ins. Co. v. Farm Bureau Mut. Ins. Co.*, 515 F. Supp. 38, 41 (D. Minn. 1981) (distinguishing other insurance policies based on the "unique purposes" of the No-Fault Act). As a result, the definition of "loss"

14

in the Act supersedes the common law definition of "loss" on which the district court relied. *Cf. Star Windshield*, 768 N.W.2d at 349-50 (relying on the unique nature of the statutory framework for auto glass insurance to distinguish common law contract principles). In this case, it is undisputed that the policyholders executed assignments to Stand Up before being treated and billed for the medical services. Under the majority rule then, the assignments of basic economic loss benefits would be pre-loss and so American Family's anti-assignment clause would preclude the assignments to Stand Up.[8]

We would reach the same conclusion if we applied the common law rule from *Travertine*, as explained above. Because American Family's anti-assignment clause is valid and enforceable under either *Travertine* or the majority rule, we need not determine which rule applies in the context of no-fault benefits. Under either approach, the court of appeals correctly concluded that the district court erred by denying American Family's motion for summary judgment and granting Stand Up's motion for summary judgment.

We acknowledge that our decision may unsettle the expectations of medical providers that have been relying on assignments of no-fault benefits. Indeed, Stand Up contends that a decision in American Family's favor will cause medical providers to refuse to treat accident victims without prior payment. This refusal, in turn, would, according to

---

[8] Stand Up contends that American Family forfeited its argument that the assignments to Stand Up were pre-loss because American Family did not raise the point in district court. But the district court did consider the pre-loss/post-loss distinction as it applied to the validity of the assignments. The court followed the majority rule that anti-assignment clauses are enforceable only with regard to pre-loss assignments, and determined that the assignments to Stand Up were post-loss. Because the district court had an opportunity to, and did in fact, consider this issue, we will not treat the argument as forfeited.

15

Stand Up, undermine a key purpose of the No-Fault Act: ensuring that automobile accident victims obtain appropriate medical treatment by assuring prompt payment for such treatment. Minn. Stat. § 65B.42(3).

But, as discussed above, there are valid policy considerations on both sides. In this specific context—in which there are countervailing policies at issue and the statutory scheme does not resolve the question—"it is for the legislature, rather than this court, to weigh the competing policies at issue and determine the appropriate balance." *Correll v. Distinctive Dental Servs., P.A.*, 607 N.W.2d 440, 447 (Minn. 2000). Should the Legislature desire a different outcome, it could amend the No-Fault Act to effectuate that intent. *See Lennartson*, 872 N.W.2d at 539 (Anderson, J., concurring) ("[I]t is for the Legislature to address the complications and problems that will flow from the statutory language [of the No-Fault Act] that the Legislature adopted."); *see also Parrish*, 874 P.2d at 1055 n.9 (noting that the Colorado Legislature amended that state's No-Fault Act to state that automobile insurance policies must allow, but not require, assignments to certain medical providers).

Based on the above analysis, we hold that American Family's anti-assignment clause precludes the assignments the policyholders made to Stand Up. Accordingly, the court of appeals did not err in concluding that American Family is entitled to summary judgment. The case is remanded to the district court for entry of judgment for American Family.

Affirmed.

CHUTICH, J., took no part in the consideration or decision of this case.

16